**Gary NEWSOM; Claims Management Services; J. David Terrell; Jerome K. Wolf; and Richard Gale, Appellants,**

**v.**

**The STATE of Texas and State Board of Insurance, Appellees.**

No. 03–94–00637–CV.

Court of Appeals of Texas, Austin.

May 1, 1996.

Rehearing Overruled June 12, 1996.

James M. Murphy, Dallas for Gary Newsom and Jerome K. Wolf.

Dan Morales, Attorney General and Linda Ibach Shaunessy, Assistant Attorney General, Financial Litigation Division, Austin, for the State of Texas and State Board of Insurance.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

KIDD, Justice.

Gary Newsom and Jerome Wolf appeal the district court's summary judgment in favor of appellees State of Texas and State Board of Insurance ("the State"). The district court granted a permanent injunction prohibiting appellants from engaging in the unauthorized practice of insurance in Texas, awarded the State restitution damages for Texas consumers, and also awarded the State its attorneys' fees. Appellants challenge the summary judgment by five points of error. We will affirm in part, reverse and remand in part, and dismiss the appeals of Claims Management Services, J. David Terrell, and Richard Gale for want of prosecution.

## BACKGROUND

The State initiated an action against appellants and others [1] for conducting the business

---

1. The State listed the following defendants in its petition: Meridian Insurance Company Ltd. ("Meridian"), Southwestern Temporary Services, Inc. ("Southwestern"); Alliance Temporary Services, Inc. ("ATS"); Metro Financial Group, Inc.; ATS, Inc. ("Metro"); ATS Employee Health Care

of insurance without obtaining a license or certificate of authority, in violation of article 1.14–1 of the Texas Insurance Code. *See* Tex.Ins.Code Ann. art. 1.14–1 (West Supp. 1996). In its motion for partial summary judgment, the State alleged, and the summary judgment evidence established, that appellants and other defendants owned and operated ATS, an employee leasing company based in Oklahoma City, Oklahoma. ATS, through its officers and directors, sold employee leasing packages to various companies. Under these packages, the client company would fire all of its employees, and then ATS would hire those same employees and lease them back to the client company. As part of the package, ATS provided workers' compensation insurance for the leased employees.

Appellants established Meridian, an insurance company in Barbados, to provide workers' compensation and employers' liability insurance for ATS. Appellants also set up ATS Health Plan to provide health insurance through Meridian. Appellants, Meridian, ATS, and ATS Health Plan were not authorized to engage in the business of insurance in Texas. Appellants also established Metro, a "dummy" corporation, which requested and obtained workers' compensation coverage from the Texas Workers' Compensation Pool. ATS used the Metro insurance policy to send certificates of insurance to ATS "employees" so that the insured employees would believe they were covered by an authorized Texas company.

In January 1990, the State brought suit in equity seeking: (1) temporary and permanent injunctions to prevent defendants from engaging in the unauthorized practice of insurance; (2) restitution damages to consumers for premiums paid; (3) civil penalties for engaging in the unauthorized practice of insurance; (4) payment of premium taxes; and (5) attorneys' fees and court costs. In April 1990, the State filed and the trial court granted the State's motion for leave to file a petition in the nature of quo warranto. *See* Tex.Civ.Prac. & Rem.Code Ann. § 66.001 (West 1986).

The State moved for partial summary judgment in January 1992. Appellants argued in response that they were exempt from the Texas Insurance Code because the contracts in question were negotiated outside of Texas. On November 23, 1992, the district court granted the State's motion, ruling that appellants were not exempt from the Insurance Code and had therefore violated article 1.14–1, section 3 of the Code by selling insurance in Texas without authorization. The court issued a permanent injunction against defendants and ordered that they be jointly and severally liable for restitution to Texas consumers totalling $2,998,343. The court based the amount of restitution on a report by an independent firm retained in ATS's bankruptcy proceeding. The court also ordered that defendants pay attorneys' fees totalling $116,288.93.

In May 1994, the district court granted Newsom's motion for rehearing and allowed the parties to submit additional summary judgment evidence. Appellants submitted affidavits in which they denied that they represented themselves as insurance agents in Texas and claimed that they procured workers' compensation policies for ATS employees through negotiations that occurred

Plan, Inc. ("ATS Health Plan"); Claims Management Services ("CMS"); Gary Newsom, as an individual, as an officer and director of ATS, as an officer of Metro, and as an officer and director of ATS Health Plan; Linda Newsom, as an individual, as an officer and director of ATS, as an officer and director of Southwestern, and as an officer and director of ATS Health Plan; Jerry L. Valentine, as an individual and as attorney-in-fact for Meridian; Jerome K. Wolf, as an individual, as an officer of Southwestern, as an officer of ATS, and as an officer of Metro; J. David Terrell, as an individual and as an officer of ATS; Dr. Trevor Carmichael, as an individual and as a director of Meridian; Aaron Jacob Johnson, Jr.,

as an individual, as an officer of ATS, and as a director of ATS Health Plan; David Williams, as an individual and as an officer of ATS; Patricia Fry, as an individual and as an officer of Metro; Richard Gale, as an individual, as an agent of CMS, and as an agent of ATS Health Plan.

In the final judgment, the remaining defendants were Meridian, Metro, ATS, ATS Health Plan, CMS, Valentine, Terrell, Gale, Newsom, and Wolf. CMS, Gale, Terrell, Newsom, and Wolf perfected appeal bonds, but only Newsom and Wolf (hereafter "appellants") filed briefs in this Court. We accordingly dismiss the appeals of CMS, Terrell, and Gale for want of prosecution. *See* Tex.R.App.P. 74(*l*)(1).

outside of Texas. On July 6, 1994, the district court rendered its final judgment, which incorporated the November 23, 1992 order granting partial summary judgment for the State and also struck the affidavits of appellants and other defendants as a discovery sanction. This appeal followed.

## JURISDICTION

The State moves to dismiss this appeal for lack of jurisdiction because the district court granted its request to file this cause as a quo warranto action. In quo warranto actions, appellants must perfect their appeals within twenty days after the date the final judgment was signed. Tex.R.App.P. 42(a)(3). The final judgment in this cause was signed on July 6, 1994. Appellants filed their appeal bonds on October 4, 1994. The State argues that this appeal should be dismissed for lack of jurisdiction because appellants failed to perfect their appeals by July 26, 1994.

 Quo warranto is an ancient common-law writ that gave the king an action against a person who claimed or usurped any office, franchise, or liberty, to inquire by what authority that person supported the claim to hold office. *State ex rel. City of Colleyville v. City of Hurst*, 519 S.W.2d 698, 700 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.). In the modern context, the State uses quo warranto actions to challenge the authority to engage in certain practices specifically enumerated by statute. *See* Tex. Civ.Prac. & Rem.Code Ann. § 66.001 (West 1986). A quo warranto proceeding may be instituted by the attorney general or by a district or county attorney. Tex. Const. art. IV, § 22; Tex.Civ.Prac. & Rem.Code Ann.

§ 66.002 (West 1986). The State is the real plaintiff and controls the litigation, even though in some instances the actions may be at the behest of private parties. *City of Hurst*, 519 S.W.2d at 700.

 The State's original petition listed both corporate and individual defendants and alleged a cause of action in equity for violations of the Texas Insurance Code. The State later amended its petition when the trial court granted leave to file in the nature of quo warranto. However, neither the amended petition nor the trial court's order specified the defendants to which the quo warranto action applied. A quo warranto action is appropriate against the corporate defendants for violations of the Insurance Code. *See* Tex.Civ.Prac. & Rem.Code Ann. § 66.001(5) (West 1986); *Washington Am. Life Ins. Co. v. State*, 545 S.W.2d 291, 295 (Tex.Civ.App.—Austin 1977, no writ). At issue is the State's power to bring a quo warranto action against individual officers of a private corporation for acts committed while holding that office.

The grounds for bringing a quo warranto action are outlined in section 66.001 of the Texas Civil Practice and Remedies Code.[2] Subsections (3)–(7) of section 66.001 authorize certain actions against private corporations and railroad companies. Tex.Civ.Prac. & Rem.Code Ann. § 66.001(3)–(7) (West 1986). Only subsections (1) and (2) authorize actions against individuals. Subsection (2) allows a quo warranto action against a public officer, but neither Newsom nor Wolf hold public office. *See id.* § 66.001(2). Therefore, the only portion of the statute on which the State can rely[3] as against Newsom and

---

**2.** Article 66.001 of the Civil Practice and Remedies Code allows an action in the nature of quo warranto if:

(1) a person usurps, intrudes into, or unlawfully holds or executes a franchise or an office, including an office in a corporation created by the authority of this state;

(2) a public officer does an act or allows an act that by law causes a forfeiture of his office;

(3) an association of persons acts as a corporation without being legally incorporated;

(4) a corporation does or omits an act that requires a surrender or causes a forfeiture of its rights and privileges as a corporation;

(5) a corporation exercises power not granted by law;

(6) a railroad company charges an extortionate rate for transportation of freight or passengers; or

(7) a railroad company unlawfully refuses to move over its lines the cars of another railroad company.

Tex.Civ.Prac. & Rem.Code Ann. § 66.001 (West 1986).

**3.** In its motion for leave to file a petition in the nature of quo warranto, the State did not rely on any specific subsection of section 66.001 of the Civil Practice and Remedies Code, but rather section 66.001 as a whole. The trial court also granted the motion without citing a specific subsection of section 66.001. In its brief, however,

Wolf is section 66.001(1), which authorizes a quo warranto action against an individual who unlawfully holds or executes an office *in a corporation created by the authority of this State. Id.* § 66.001(1).

Generally, quo warranto actions are brought against individuals who are either public officials *or* officers of public or quasi-public corporations, such as municipalities, school districts and utilities. *See generally Poole v. Dallas County Levee Improvement Dist.,* 128 S.W.2d 502 (Tex.Civ.App.—Amarillo 1939, writ dism'd) (quo warranto is proper remedy for attacking authority of supervisors of levee district); *Crain v. Adams,* 120 S.W.2d 290 (Tex.Civ.App.—Amarillo 1938, no writ) (quo warranto was exclusive remedy for litigating authority of officials controlling school district); *State ex rel. La Crosse v. Averill,* 110 S.W.2d 1173 (Tex.Civ.App.—San Antonio 1937, writ ref'd) (quo warranto action properly brought to remove elected commissioners of a municipality for passing ordinance to pay public funds to attorneys for private purposes).

Although they occur far more infrequently, cases against officers of private corporations are not unprecedented. Texas courts have held that a quo warranto action is appropriate to challenge the result of an election to a board of directors of a private corporation. *See Salgo v. Matthews,* 497 S.W.2d 620, 624–25 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.); *Robertson v. State ex rel. Clement,* 406 S.W.2d 90, 92 (Tex.Civ.App.—Fort Worth 1966, writ ref'd n.r.e.); *State ex rel. Yelkin v. Hand,* 331 S.W.2d 789, 797–98 (Tex. Civ.App.—Houston 1959), *writ ref'd n.r.e. per curiam,* 333 S.W.2d 109 (Tex.1960). None of these opinions discuss how the statute can be interpreted to allow quo warranto actions against officers of private corporations. Nevertheless, this use of quo warranto appears to be justified because it comports with the traditional use of quo warranto to determine a claim of right to an office or franchise.

In the instant cause, the State does not question the right of Newsom and Wolf to serve as directors of their corporations, but rather ·prosecutes a quo warranto action to prevent their unlawful acts as officers of an insurance company. The State's authority to bring such an action in the nature of quo warranto appears to be a question of first impression. Although its position is unprecedented, the State argues that a quo warranto action is justified in this cause by the literal language of the statute. We reject the State's argument because we believe the State construes the statute too broadly.

██ The remedies available for quo warranto are instructive on the proper scope of an action under section 66.001(1). The statutory remedies for quo warranto actions against individuals are outlined in section 66.003 of the Civil Practice and Remedies Code.[4] The statute *requires* that the court enter judgment (1) removing the person from office, and (2) assessing attorneys' fees. Tex. Civ.Prac. & Rem.Code Ann. § 66.003 (West 1986). If the court chooses, it may under section 66.003(3) fine the defendants for unlawfully holding or executing the office or franchise. *Id.* These remedies are exclusive. *Cole v. State ex rel. Cobolini,* 163 S.W. 353, 353 (Tex.Civ.App.—San Antonio), *writ dism'd,* 106 Tex. 472, 170 S.W. 1036 (1914) ("No other judgment in a quo warranto case is prescribed or authorized by the laws of this state."). This limitation on remedies is based on the purpose of quo warranto actions: to test whether an individual has the proper authority to hold an office, not to test the validity of their actions once in office. *See State ex rel. Dowlen v. Rigsby,* 17 Tex. Civ.App. 171, 43 S.W. 271, 272, *writ ref'd,* 91 Tex. 351, 43 S.W. 1101 (1897); *State ex rel. Phillips v. Trent Indep. Sch. Dist.,* 141 S.W.2d 438, 440 (Tex.Civ.App.—Eastland

---

the State makes it clear that it rests its right to bring a quo warranto action against Newsom and Wolf on section 66.001(1).

**4.** The statute provides that, if the government prevails in a quo warranto action, the trial court:
(1) shall enter judgment removing the person from the office or franchise;

(2) shall enter judgment for the costs of prosecution in favor of the relator; and
(3) may fine the person for usurping, intruding into, or unlawfully holding and executing the office or franchise.
Tex.Civ.Prac. & Rem.Code Ann. § 66.003 (West 1986).

1940, writ ref'd). The limited statutory remedies for quo warranto show that the scope of permissible actions under section 66.001(1) has not, as the State argues, been broadly expanded beyond the historical use of the writ. We hold that a quo warranto action against Newsom and Wolf is not proper in this cause because the State only questions the validity of their actions rather than their right to hold office.

Because the State cannot properly bring a quo warranto action against Newsom and Wolf as individuals, appellants are not bound by the accelerated appellate timetable of Rule 42(a). Newsom and Wolf had ninety days from July 6, 1994, the date the final judgment was signed, to perfect their appeal. Tex.R.App.P. 41(a)(1). This Court has jurisdiction to hear their appeal because they perfected it on October 4, 1994, within ninety days of July 6, 1994.

## DISCUSSION

### A. Affidavits

■ In their first point of error, appellants argue that the trial court improperly struck their affidavits, which were submitted as summary judgment evidence in May 1994. In depositions taken in 1990, appellants, citing the Fifth Amendment to the United States Constitution, refused to answer *any* of the State's questions regarding their insurance dealings. In November 1992, the district court granted the State's motion for partial summary judgment. Because appellants exercised their privilege, the court had only the State's summary-judgment evidence before it when ruling on this motion. In May 1994, appellants petitioned the trial court for rehearing of its order on the State's motion for partial summary judgment. The court granted rehearing on the motion, and appellants submitted affidavits in which they: (1) denied they acted as insurance agents, (2) denied they marketed insurance, (3) asserted that the insurance policy from Meridian was procured and negotiated outside of Texas, and (4) asserted that premium taxes were paid. During the four years before the rehearing on the motion for summary judgment, appellants never supplemented or changed their answers to the State's discovery requests, nor did they ever complete their oral depositions. The trial court struck appellants' affidavits as a discovery sanction and did not consider them as summary judgment evidence on rehearing. We review the trial court's imposition of discovery sanctions under an abuse of discretion standard. *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 442 (Tex.1984).

We find appellants' use of the Fifth Amendment privilege in this cause to be a key factor in our review of the trial court's decision to strike the affidavits. Appellants certainly had the right to assert their Fifth Amendment privilege to avoid civil discovery if they reasonably feared the answers would tend to incriminate them. *Texas Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex.1995); *Ex parte Butler*, 522 S.W.2d 196, 198 (Tex.1975). However, by submitting affidavits, appellants abused their self-incrimination privilege because they used it as both a "sword" and a "shield." On the one hand, appellants used the privilege to avoid answering the State's discovery requests; on the other hand, appellants selectively disclosed favorable information in an attempt to obtain relief from the trial court. This "offensive use" of a privilege has been recognized and condemned by the Texas Supreme Court. *See Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex.1993) (test to determine whether party has made "offensive use" of privilege); *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 107–08 (Tex.1985) (trial court may force party making offensive use of a privilege to disclose information or face sanctions).

In response to appellants' offensive use of their privilege, the trial court exercised its discretion to strike the affidavits as a sanction. The trial court had two bases for the sanction. First, the Texas Supreme Court has held that a trial court has discretion to impose discovery sanctions pursuant to Texas Rule of Civil Procedure 215 when a party makes "offensive use" of a privilege. *Denton*, 897 S.W.2d at 759. Second, the trial court had the discretion to impose Rule 215 sanctions because appellants failed to supplement their answers to the State's discovery requests. *See* Tex.R.Civ.P. 166b(6)(a)(2) &

215(5).[5] In striking appellants' affidavits, the trial court used the well-recognized sanction of prohibiting the use of evidence tainted by improper conduct. *See* Tex.R.Civ.P. 215(5); *Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 914 (Tex.1992).

We hold that the trial court did not abuse its discretion by striking appellants' affidavits. Appellants abused their Fifth Amendment privilege, and the trial court's sanction was an appropriate response to their improper conduct. Appellants did not show good cause for their failure to supplement discovery responses once they lifted the veil of Fifth Amendment silence and selectively chose to file affidavits in support of affirmative relief from the trial court. In punishing appellants for their misconduct, the trial court acted well within its discretion under Rule 215. Appellants' first point of error is overruled.

*B. Summary Judgment*

*1. Insurance Code Violations*

■ In their fourth and fifth points of error, appellants argue that the district court improperly granted summary judgment that they violated various provisions of the Insurance Code and that they were not exempt from the Code.

The standards for reviewing a motion for summary judgment are well established: (1) The movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). When the plaintiff moves for summary judgment, it must prove every element of the cause of action as a matter of law. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986).

Even if the defendant fails to file a response, the plaintiff still must carry its burden of proof. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

In its petition and motion for partial summary judgment, the State alleged that appellants violated article 1.14–1 of the Texas Insurance Code by engaging in the unauthorized practice of insurance, and sought to enjoin appellants from continuing to conduct their insurance business. The State presented a great deal of evidence demonstrating that appellants violated article 1.14–1 of the Insurance Code. Affidavits from the Commissioner of Insurance's office demonstrated that appellants, as well as ATS and Meridian, were not licensed to practice insurance in Texas. Newsom was the sole stockholder and president of ATS, and Wolf was a vice president of ATS. After ATS had been running its leasing company for a few years, Newsom and Wolf formed Meridian, which was incorporated in Barbados with Newsom as a director. Meridian issued workers' compensation and health insurance policies to ATS and ATS Health Plan for Texas insureds and collected premiums on those policies. The State's summary-judgment evidence also proved that ATS was undercapitalized and financially troubled and that Newsom was receiving money for his personal use. ATS corporate funds were used directly to make Newsom's house payments and to pay for other items and services for the benefit of Newsom.

Appellants, in their answer and in their response to the motion for summary judgment, offered a general denial and pled as an affirmative defense that they were exempt from the Insurance Code. Appellants offered only their affidavits as summary judgment evidence, and they attacked the State's summary-judgment evidence on evidentiary grounds. The trial court overruled the objections, and appellants do not challenge those rulings on appeal. Appellants then had only their affidavits to oppose the State's motion for summary judgment. We have held that the trial court properly struck the

---

**5.** Under Rule 166b, a party has a duty to reasonably supplement a discovery response to discovery if: (1) new information makes the original response incorrect or incomplete when made; or

(2) the party knows that the response though correct and complete when made is no longer correct and complete. Tex.R.Civ.P. 166b(6)(a).

affidavits. Because the State's summary judgment evidence conclusively establishes that appellants engaged in the unauthorized practice of insurance, summary judgment for an injunction and attorneys' fees was proper. Appellants' fourth and fifth points of error are overruled.

### 2. Restitution

■ In their third point of error, appellants allege that the trial court erred in granting summary judgment against them for restitution to Texas consumers in the amount of $2,998,343. The State's summary judgment evidence in support of the restitution damages came from the bankruptcy proceeding for ATS in the Western District of Oklahoma. ATS's trustee in bankruptcy retained Lindsey Morden Claim Services to resolve ATS's workers' compensation claims. Lindsey Morden calculated the amount of claims ATS owed to insureds in Texas and other states, and the bankruptcy court approved the report. The trial court used the report to set the amount of restitution damages on summary judgment. Appellants argue that summary judgment was improper because material fact issues exist with regard to the amount of restitution damages. Appellants contend that the Lindsey Morden report does not link appellants with the claimants listed and does not properly assess the value of the cases described. Appellants also allege "contradictions and inconsistencies" in the report.

■ Summary judgment is designed to eliminate patently unmeritorious claims or untenable defenses, not to deprive litigants of a full hearing on the merits of a genuine issue of material fact. *Clear Creek Basin Auth.*, 589 S.W.2d at 678. To obtain summary judgment, a plaintiff must prove every element of its cause of action as a matter of law, including damages. *MMP, Ltd.*, 710 S.W.2d at 60. Summary judgment is therefore inappropriate in cases involving unliquidated damages. *State v. Roberts*, 882 S.W.2d 512, 514 (Tex.App.—Austin 1994, no writ).

■ If the restitution damages calculated by Lindsey Morden could be characterized as "liquidated," then summary judgment would be appropriate. *Id.* "Liquidated damages" constitute the measure of damages agreed to in advance by the parties as just compensation for a breach of a contract or other harm where the harm caused is difficult to estimate accurately. *Sisk v. Parker*, 469 S.W.2d 727, 732 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.). The restitution damages in this appeal do not qualify as "liquidated damages" simply because they were estimated by a third-party consultant. Damages become "liquidated" when the *parties* have agreed to the amount at issue. *Id.* Thus, restitution damages could only have become liquidated in this case if both parties had stipulated that the Lindsey Morden figure of $2,998,343 was the proper amount. Because the parties did not so agree, the restitution damages were not liquidated and therefore not an appropriate subject of summary judgment. We sustain appellants' third point of error.

Our disposition makes discussion of appellants' second point of error unnecessary.

## CONCLUSION

The appeals of Claims Management Services, J. David Terrell, and Richard Gale are dismissed for want of prosecution.

Newsom and Wolf's first, fourth, and fifth points of error are overruled, and the portion of the district-court judgment granting the State a permanent injunction and attorneys' fees is affirmed.

Newsom and Wolf's third point of error is sustained. We reverse that portion of the district-court judgment awarding restitution damages and remand that portion of this cause for further proceedings consistent with this opinion.