Roosevelt ROBINSON, Jan Calloway, Linda McDonald, Tommie Quivers, and Cedric Davis, Appellants

v.

Shirley NEELEY, In her Official Capacity as Commissioner of Education, Eugene Young, In his Official Capacity as Superintendent of Wilmer–Hutchins Independent School District, The Board of Managers of Wilmer–Hutchins Independent School District, and Sandra Donato, Donnie Fox, Saundra King, Albert Black, Jr., and Michelle Willhelm, In their Official Capacities, Appellees.

No. 05–05–01079–CV.

Court of Appeals of Texas, Dallas.

May 30, 2006.

Mark W. Robinett, Brim, Arnett, Robinett, Hanner & Conners, P.C., Austin, for Appellant.

Leslie L. McCollom, O'Hanlon & Associates, Merle Hoffman Dover, Asst. Atty. Gen., Austin, for Appellee.

Before Justices WRIGHT, O'NEILL, and FRANCIS.

## OPINION

Opinion by Justice FRANCIS.

This case arises from Commissioner of Education Shirley Neeley's (the Commissioner) determination to appoint a board of managers (BOM) to control the operations of the Wilmer–Hutchins Independent School District (WHISD or the district). After the BOM decided to essentially shut down the district, appellants sued for declaratory and injunctive relief, asserting standing as former employees (Roosevelt Robinson, Jan Calloway, and Tommie Quivers), a trustee-elect to the school board (Cedric Davis), a taxpayer (Linda McDonald), and voters (Davis and Calloway). The trial court entered an order granting appellees' plea to the jurisdiction and dismissed appellants' suit for want of standing. In five issues, appellants contend they have standing in their various capacities. We affirm the trial court's order.

■ Standing is a prerequisite to the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 553–54 (Tex.2000). Standing requirements weed out those lawsuits where the plaintiffs' interests and injuries are not particularized and distinct from those of the general public. *See Williams v. Lara,* 52 S.W.3d 171, 178 (Tex.2001). A person has standing if: (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the defendant's wrongful act; (2) he has a direct relationship between the alleged injury and the claim being adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused him some injury in fact, either economic, recreational, environmental, or otherwise; or (5) he is an appropriate party to assert the public's interest in the matter, as well as his own. *Nauslar v. Coors Brewing Co.,* 170 S.W.3d 242, 249 (Tex.App.-Dallas 2005, no pet.).

■ Defendants may raise the absence of subject matter jurisdiction by filing a plea to the jurisdiction. *Bland,* 34 S.W.3d at 554. A plea to the jurisdiction challenges whether the plaintiff's pleadings, taken as true, fail to invoke the trial court's jurisdiction. *See Nauslar,* 170 S.W.3d at 248–49. The trial court may hear such evidence as is necessary to establish whether it has jurisdiction. *Bland,* 34 S.W.3d at 554.

■ We review de novo the trial court's ruling on a plea to the jurisdiction. *Nauslar,* 170 S.W.3d at 248. In reviewing the ruling, we construe the allegations in the pleadings in the plaintiff's favor. *Id.* at 249. As the plaintiffs below, appellants bore the burden to allege facts that affirmatively demonstrated the trial court's jurisdiction to hear the case. *Id.* at 248.

The parties' dispute arises from conflicting interpretations of the Commissioner's powers under the Texas Education Code. The education code empowers the State Board of Education to adopt rules to evaluate the performance of school districts and to assign them performance ratings ranging from "exemplary" to "academically unacceptable." *See* TEX. EDUC.CODE ANN. § 39.072(a) (Vernon Supp.2005) (unless otherwise noted, all citations to section numbers herein are to the education code). The education code provides a range of sanctions for the Commissioner to impose upon lagging districts. *See id.* at § 39.131. At the upper end of the available sanctions, the Commissioner may "appoint a management team to direct the operations of the district in areas of unacceptable performance." *See id.* at § 39.131(a)(8). Furthermore, "if a district has been rated as academically unacceptable for a period of one year or more, [the Commissioner may] appoint a board of managers to exer-

cise the powers and duties of the board of trustees." *See id.* at § 39.131(a)(9).

The necessary jurisdictional facts were developed during a July 19, 2005 evidentiary hearing on the plea to the jurisdiction. In November 2004, in response to ongoing financial problems in the WHISD, the Commissioner appointed appellees Albert Black and Michelle Willhelm as a management team for WHISD. Black and Willhelm were paid hourly fees for their services. The management team began addressing the WHISD's financial problems by reducing staff and overseeing purchasing.

The urgent obstacle to the district's solvency was the discovery that WHISD had been collecting property taxes at a tax rate of $1.50 per $100 valuation even though it appeared the district voters had authorized a rate of only $.90 per $100 valuation. In elections held in September 2004 and on May 7, 2005, the district voters soundly defeated the district's proposals to raise the tax rate to $1.50. Without the revenue generated by the higher tax rate, WHISD faced a 40% cut in funding and a $7,000,000 budget deficit.

In addition to its daunting financial problems, WHISD was also experiencing academic difficulties. Initially, WHISD had received an "academically acceptable" rating for the 2003–2004 school year. On March 21, 2005, the Commissioner retroactively downgraded WHISD's rating for the 2003–2004 school year to "academically unacceptable" after an investigation uncovered widespread cheating in the district's elementary schools on the State-mandated TAKS test. Preliminary information suggested the district would also receive an "academically unacceptable" rating for the nearly-completed 2004–2005 school year.

On May 12, 2005, the commissioner appointed the BOM to exercise the powers and duties of the WHISD Board of Trus-

tees. The five BOM members included Black and Willhelm as paid members, and appellees Sandra Donato, Donnie Foxx, and Saundra King as unpaid community members. The existing WHISD Board of Trustees was suspended. The Commissioner then appointed appellee Eugene Young to be WHISD superintendent. Without the $1.50 tax rate, Young concluded that WHISD would be unable to operate for the 2005–2006 school year. On June 27, 2005, acting on Young's recommendation, the BOM voted to shut down WHISD's schools and terminate most of the district's employees. Although the school board appealed the BOM's determination through administrative channels, it did not file a lawsuit.

Appellants sued for declaratory relief that the Commissioner exceeded her authority in appointing the BOM because WHISD had not been rated "academically unacceptable" for one full year as required by section 39.131(9). Appellants asked for further declaratory relief that the Commissioner's actions were invalid, the BOM lacked authority to shut down the district and fire its employees, Young is not the superintendent, Young has no authority to act for WHISD, and the board of trustees is the only entity authorized to act for WHISD. Appellants also sought injunctive relief against the BOM and Young, and recovery of their attorney's fees. Appellees filed a plea to the jurisdiction alleging that appellants lacked standing to bring their claims and the employee/plaintiffs had failed to exhaust their administrative remedies.

Testimony during the July 19, 2005 hearing revealed disagreement between the Commissioner's appointees and the board of trustees regarding the district's viability. Black, Willhelm, and Young took the position that the failure of the $1.50 tax rate proposals doomed the district be-

cause it could not survive without the tax increase. Black and Willhelm testified that they would have directed the school board to take the same actions to shut down the district had they continued to oversee WHISD as a management team. Black and Willhelm further testified that the appointment of the BOM reduced the district's expenses because Young drew a smaller salary than the previous superintendent and Black and Willhelm billed fewer hours than they would have as a management team overseeing the school board.

Although Davis conceded that the district needed the $1.50 tax rate to survive, Robinson, a former WHISD principal, testified that the former superintendent had several proposals to keep the district afloat at the $.90 tax rate, and School Board President Luther Edwards, III testified that he thought the district could survive on the $.90 rate. Furthermore, all of the members of the suspended school board and Davis, who had been elected during the May 7, 2005 election, wanted the $1.50 tax rate proposal to be submitted to the voters for a third time. The trustees alleged that prior to the May 7th election, the district's former superintendent had led them to believe that WHISD could survive on the $.90 tax rate by cutting extracurricular activities. The trustees alleged that this information had been communicated to the voters through meetings, fliers, and brochures. The trustees opined that with their new understanding that the district's survival was at stake, the voters would approve the $1.50 tax rate.

During oral argument, appellees contended that only the WHISD Board of Trustees had standing to contest the appointment and actions of the BOM. After submission of this appeal, however, appellees' counsel filed a letter brief on the Commissioner's behalf contending that appellants lack standing because a challenge

to the BOM's authority can only be brought in a quo warranto proceeding.

 "An action in the nature of quo warranto is available if: (1) a person usurps, intrudes into, or unlawfully holds or executes a franchise or an office...." See TEX. CIV. PRAC. & REM.CODE ANN. § 66.001(1) (Vernon 1997). See also Crawford v. State, 153 S.W.3d 497, 501 (Tex. App.-Amarillo 2004, no pet.). Quo warranto proceedings are brought in the name of the State by the Attorney General or the proper district or county attorney. Lewis v. Drake, 641 S.W.2d 392, 393 (Tex.App.-Dallas 1982, orig. proceeding). In quo warranto proceedings, the State, through its chosen agents, acts to protect itself and the public good, though sometimes it is brought at the instance of, and for the benefit of, a private individual with a special interest. Id. at 394. Subject to a small number of exceptions, quo warranto is the exclusive remedy for the public to protect itself against the usurpation or unlawful occupancy of a public office and to challenge the authority of a public officer. Norville v. Parnell, 118 S.W.3d 503, 505 (Tex.App.-Dallas 2003, pet. denied); Lewis, 641 S.W.2d at 394.

 Appellants' suit challenges the validity and authority of public officers. We agree with the Commissioner that appellants have no standing to pursue the declaratory and injunctive relief they seek. See Lewis, 641 S.W.2d at 394; Hamman v. Hayes, 391 S.W.2d 73, 74–75 (Tex.App.-Beaumont 1965, writ ref'd) (concluding taxpayer suit to contest legality of police chief's appointment on grounds of illegal public expenditures could only be brought in quo warranto). See also Williams v. Castleman, 112 Tex. 193, 247 S.W. 263, 269–70 (Tex.1922) (concluding that where defendant is at least de facto officer, quo warranto, rather than injunction, is exclusive remedy). But see Tovar v. Bd. of

*Trustees of Somerset Indep. Sch. Dist.,* 994 S.W.2d 756, 759 (Tex.App.-Corpus Christi 1999, pet. denied)(concluding school board had standing to bring declaratory judgment action to resolve dispute over whether member had vacated office so as to authorize board to exercise its appointment authority). Thus, the trial court did not err in granting the plea to the jurisdiction.

Moreover, assuming that quo warranto is not the exclusive means to challenge the authority of the BOM and Young, appellants still lack standing to raise their complaints. In their first two issues, appellants contend that former employees Robinson, Calloway, and Quivers have standing and should not be required to exhaust their administrative remedies. Appellants concede that the former employees were not directly injured by the Commissioner's appointments, but they contend they were indirectly affected in that the persons appointed have made decisions that adversely impacted the former employees' careers.

Appellants' causes of action challenge the *appointment* of the BOM rather than particular *actions* of the BOM. Without regard to the merits of any complaints Robinson, Calloway, and Quivers may have regarding their terminations, they did not demonstrate the type of direct, particular injury arising from the appointment of the BOM required to show standing. *See Williams,* 52 S.W.3d at 178; *Nauslar,* 170 S.W.3d at 249. Because the former employees have no standing, the issue of whether they must exhaust administrative remedies is immaterial. We overrule appellants' first two issues.

In their third issue, appellants contend Davis has standing to challenge the commissioner's appointment of the BOM because it prevented him from performing his duties as a school board trustee. In their brief, appellants cite Article 1, § 19 of the Texas Constitution and *Tarrant County v. Ashmore,* 635 S.W.2d 417 (Tex.1982) as authority supporting their contention. Appellants do not explain how Article 1, § 19 provides Davis with standing. *Ashmore* states that "an officer's interest in his elected position, though not 'property' in the conventional sense, is a recognizable interest for purposes of procedural due process analysis." *Ashmore,* 635 S.W.2d at 422. Although appellants do not raise a due process issue, they contend that Davis's substantial interest in assuming his office, if recognizable for purposes of procedural due process analysis, should also be a justiciable interest allowing him to challenge the Commissioner's decision to deprive him of his "right" to his elected office. Appellants cite no authority for this extension of *Ashmore.*

Although Davis was elected to the WHISD board of trustees before its suspension, he did not show that he took the oath of office. *See* TEX. EDUC.CODE ANN. § 11.061 (Vernon 1996) (describing how elected trustees qualify for office). Appellants cite no authority showing that a prospective officeholder has standing to contest the suspension or abolishment of the office.

Furthermore, passages in *Ashmore* limit the "recognizable interest" in an office to those officers currently serving. *Ashmore* states, "Our holding in this case should not be construed to mean that an officer, duly elected and *inducted into his position* for a definite term, has no financial or 'property' interest that may be protected against interference by others not acting under statutory or constitutional authority." *See id.* at 422 (emphasis added). Later, *Ashmore* quotes with approval an opinion stating that while an officer may not complain about the abolishment of his office or his removal or suspension from office through

lawful means, "it does not follow that he has absolutely no financial or property interest which may be protected by a court of equity as against one who otherwise and by private means seeks to interfere with his possession and conduct of such office *during his incumbency therein.*" *Id.* (quoting *Sutton v. Adams,* 180 Ga. 48, 178 S.E. 365, 375 (1934)) (emphasis added). There is no evidence in the record showing the Commissioner's appointees blocked Davis from taking his oath and assuming his position on the suspended board.

Finally, even if Davis had properly qualified as a trustee, the causes of action he hopes to assert belong to the WHISD Board of Trustees. "An independent school district is governed by a board of trustees who, as a body corporate, shall oversee the management of the district." TEX. EDUC.CODE ANN. § 11.051(a) (Vernon 1996). Davis, as a prospective trustee, suffered no particularized injury from the suspension of the board's powers. *See id.* Cf. *Brown v. Todd,* 53 S.W.3d 297, 305–06 (Tex.2001)(city council member, not joined by the council or even other members, lacked standing to maintain suit claiming mayor acted outside his authority and usurped council's authority by issuing executive order that did not personally apply to the member). We overrule appellants' third issue.

 In their fourth issue, appellants contend that McDonald, as a property owner whose tax dollars are being spent compensating the board of managers and financing their decisions, has standing to challenge the commissioner's appointment of the board. Unless standing is conferred by statute or they can show a particularized injury, taxpayers have no standing to contest governmental decision-making. *See Bland,* 34 S.W.3d at 555. A taxpayer may sue, however, to enjoin the illegal expenditure of public funds upon a show-ing that (1) the plaintiff is a taxpayer, and (2) that public funds are expended on the allegedly illegal activity. *See Williams,* 52 S.W.3d at 179. The taxpayer may not sue to recover amounts already illegally expended, but may sue to stop proposed illegal expenditures. *Id.* at 180.

Appellants' active pleading alleges that "the acts of terminating the employment of virtually all campus personnel and negotiating with other districts to assume the task of educating [WHISD] students involves the expenditure of public funds which cannot be recovered by any means in the future, to the detriment of the taxpayers of [WHISD], including Plaintiff McDonald." Nowhere in appellants' active pleading or their brief do they accuse the Commissioner, the BOM, or Young of expending public funds on an illegal activity. Rather, appellants complain that the expenditures were made by an "invalid" board. Appellants cite no authority for the proposition that a public officer, performing his duties in good faith, is engaged in illegal activity if his authority is in dispute.

 Moreover, even if the Commissioner's appointments were ultimately declared invalid, the actions taken by the BOM and Young are not. The Commissioner's appointments rendered the BOM members and Young at least de facto officers. *See Rivera v. City of Laredo,* 948 S.W.2d 787, 794 (Tex.App.-San Antonio 1997, writ denied). For public policy reasons, the law validates their acts. *Id.; Forwood v. City of Taylor,* 209 S.W.2d 434, 435 (Tex.Civ.App.-Austin 1948) (op. on reh'g), *aff'd,* 147 Tex. 161, 214 S.W.2d 282 (1948).

Citing the testimony of Black and Willhelm, appellees contend the disputed expenditures would have been made in any event because the management team would have directed the school board to

take the same steps to terminate the employees that the BOM took. Appellants, in turn, contend that the fact that the "invalid" board is expending, "public funds on a matter far afield from the district's normal and essential operating budget ..." gives taxpayers a justiciable interest. Turning to the education code, we note that one difference between the powers of a management team and a board of managers is that the latter can "amend the budget of the district" while the former "may not adopt a budget for the district that provides for spending a different amount, exclusive of required debt service, from that previously adopted by the board of trustees." *Compare* § 39.135(c)(6) (enumerating powers and restrictions of management team) *with* § 39.136(b) (discussing powers of board of managers). The record, however, does not show that the WHISD Board of Trustees ever adopted a budget for the 2005–2006 school year. Instead, the record shows there were proposals for proceeding at the $.90 rate and speculation from the trustees regarding whether they could get the voters to approve more money for the district. Under these circumstances, we agree with appellees that the disputed expenditures would have been made in any event. We conclude that appellants have not shown standing under the illegal expenditure exception. We overrule appellants' fourth issue.

In their fifth issue, appellants contend that Calloway and Davis have standing as voters in the WHISD. Appellants concede that one's status as a voter, without more, does not confer standing to challenge the lawfulness of governmental actions. *See Brown*, 53 S.W.3d at 302. Texas courts have always required that the voter show "some injury distinct from that sustained by the public at large." *Id.*

Appellants suggest that we distinguish *Brown* because the commissioner is an appointed, rather than elected, official. We see no basis for such a distinction. Questions of standing turn upon the status of the plaintiff rather than the status of the defendant. *See Nauslar*, 170 S.W.3d at 249. Appellants concede that the deprivation of which they complain is shared by "each individual voter within the confines of Wilmer–Hutchins Independent School District...." Thus, appellants cannot meet their burden of showing some injury distinct from that shared by the public at large. *See Brown*, 53 S.W.3d at 302. We overrule appellants' fifth issue.

We affirm the trial court's order granting the plea to the jurisdiction.