**Jud WALTON and Janet Walton, Appellants,**

v.

**CITY OF MIDLAND et al, Appellees.**

**No. 11–08–00143–CV.**

Court of Appeals of Texas, Eastland.

Jan. 8, 2009.

Rehearing Overruled Feb. 5, 2009.

---

Jacqueline W. Allen, Allen & Allen, Midland, for appellants.

Fredrick Fritz Quast, Wayne K. Olson, Taylor, Olson, Adkins, Sralla & Elam, L.P., Fort Worth, J. Derrick Price, Joe Edward Lea, Scott S. Cooley, McGinnis, Lochridge & Kilgore, L.L.P., Austin, for appellees.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

Jud and Janet Walton filed suit against the City of Midland, its current and two former council members, the City's interim city manager, and Endeavor Energy Resources, L.P., complaining of a permit issued by the City to Endeavor to drill a well on the Waltons' land and seeking injunctive relief. Four council members were sued individually and in their official capacity. The remaining council members and the interim city manager were sued only in their official capacity. Unless necessary for clarity, the council members, both individually and in their official capacity, and the City's interim manager will be referred to collectively as Council Members.

The City filed a plea to the jurisdiction on behalf of itself and the Council Members. The trial court conducted an evidentiary hearing, and denied the City's plea and the Waltons' request for temporary injunctive relief; both sides filed interlocutory appeals. Endeavor, meanwhile, drilled the permitted well. The Waltons concede that their appeal is now moot, and we dismiss it for want of jurisdiction. The Waltons also concede that their only remaining claims are against the Council Members.[1] Consequently, the only issue before us is whether the trial court correctly denied the Council Members' plea to the jurisdiction. We find that the Waltons lack standing and, therefore, reverse the trial court's order.

## I. *Background Facts*

The Waltons own the surface estate of a forty-acre tract inside the city limits of Midland. Endeavor owns an oil and gas lease that includes the Waltons' tract. Endeavor applied for a permit to drill a well on the Waltons' tract. The City held a public hearing, and the city council voted to deny the application. Endeavor filed suit contending that the City's decision constituted an inverse condemnation, and it sought actual and punitive damages. Endeavor and the City ultimately reached a settlement agreement, and as part of their agreement, the City granted the previously denied drilling permit application.

The Waltons then filed this suit. They asked the trial court to enter a declaratory judgment that the Council Members who voted in favor of the settlement acted without lawful authority, to declare the settlement agreement void ab inititio, and to award them their attorney's fees. The City and Council Members responded with a plea to the jurisdiction. When the trial court denied the City's plea and the Waltons' request for temporary injunctive relief, it made the following findings:

- The City Council vote to settle the Endeavor lawsuit was a governmental action attributable to and binding on the City of Midland;

- The decision of the Midland City Council to authorize the drilling permit was a legislative act; [and]

- Whatever liability exists, if any, against the City of Midland and Endeavor, there is no personal liability nor injunctive relief available against

---

1. The City and Council Members filed a single cross-appeal. Their fourth issue contends that the Waltons' claims are barred by sovereign immunity. That issue was, however, advanced below only on behalf of the City. Even if it were construed to include the council members acting in their official capacity, it would not reach the claims asserted against the council members individually. Because we find the Waltons lack standing, it is unnecessary for us to address this issue further.

present and former members of the City Council.[2]

## II. Issues

The Council Members challenge the trial court's denial of their plea to the jurisdiction with three issues. They argue that the Waltons lack standing because a quo warranto proceeding is the exclusive remedy in this instance, because the Waltons have no justiciable interest, and because the Waltons' claims are not ripe.

## III. Standing

 Standing is a prerequisite to the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex.2000). Standing requirements weed out those lawsuits where the plaintiff's interests and injuries are not particularized and distinct from those of the general public. *See Williams v. Lara*, 52 S.W.3d 171, 178 (Tex.2001). A person has standing if: (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the defendant's wrongful act; (2) he has a direct relationship between the alleged injury and the claim being adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused him some injury in fact, either economic, recreational, environmental, or otherwise; or (5) he is an appropriate party to assert the public's interest in the matter, as well as his own. *Robinson v. Neeley*, 192 S.W.3d 904, 907 (Tex.App.-Dallas 2006, no pet.).

### A. Standard of Review.

 Whether a court has subject-matter jurisdiction is a question of law and, therefore, is reviewed de novo. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex.2002). Initially, we determine jurisdiction by considering whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). The pleadings are construed liberally in favor of the plaintiff, and we look to the pleader's intent. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). In some instances, however, consideration of evidence and resolution of disputed facts are necessary to determine jurisdiction. *Miranda*, 133 S.W.3d at 226. In that instance, we consider any relevant evidence submitted by the parties when necessary to resolve the jurisdictional issue raised. *Id.* at 227.

### B. Quo Warranto.

The Council Members contend initially that a quo warranto[3] proceeding was the Waltons' exclusive remedy because they were attempting to control the actions of city officials. Quo warranto is an ancient common-law writ that gave the King an action against a person who claimed or usurped any office, franchise, or liberty to inquire by what authority he supported the claim to hold office. *Newsom v. State*, 922 S.W.2d 274, 277 (Tex.App.-Austin 1996, writ denied). Today, Tex. Civ. Prac. &

2. These findings would support a qualified official immunity defense for the council members sued individually. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 162–63 (Tex.2004) (council members are immune from liability for actions taken (1) within the scope of authority (2) in performing the discretionary duties of the office (3) in good faith). That, however, is an affirmative de-

fense to damages and not the subject of a plea to the jurisdiction. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 843 (Tex.2007). Consequently, the parties have not addressed the significance of these findings, and we need not address them directly either.

3. Latin for "by what authority?" Black's Law Dictionary 1264 (7th ed.1999).

REM.CODE ANN. § 66.001(1) (Vernon 2008) provides that a quo warranto action is available if "a person usurps, intrudes into, or unlawfully holds or executes a franchise or an office, including an office in a corporation created by the authority of this state."

 Quo warranto proceedings are brought in the name of the State by the attorney general or the proper district or county attorney. *Lewis v. Drake*, 641 S.W.2d 392, 393 (Tex.App.-Dallas 1982, orig. proceeding). In quo warranto proceedings, the State, through its chosen agents, acts to protect itself and the public good, though sometimes the proceeding is brought at the instance of, and for the benefit of, a private individual with a special interest. *Robinson*, 192 S.W.3d at 909. Subject to a small number of exceptions, quo warranto is the exclusive remedy for the public to protect itself against the usurpation or unlawful occupancy of a public office and to challenge the authority of a public officer. *Norville v. Parnell*, 118 S.W.3d 503, 505 (Tex.App.-Dallas 2003, pet. denied).

The Waltons respond that quo warranto is the exclusive remedy to challenge an individual's *right* to occupy an office but that it is neither the exclusive nor proper remedy when challenging the *actions* of a duly elected public official. They rely, in part, on this court's holding in *State ex rel. Phillips v. Trent Indep. Sch. Dist.*, 141 S.W.2d 438 (Tex.Civ.App.-Eastland 1940, writ ref'd). *Phillips* arose out of a state-mandated school district consolidation. Goodman Common School District was consolidated with the Trent Independent School District. Trent ISD's trustees voted to close the Goodman campus and relocate its equipment. A group of Goodman taxpayers then filed suit seeking an injunction. The Jones County attorney subsequently filed an information in the nature of a quo warranto and sought an order declaring the consolidation of the two school districts void or, alternatively, an injunction forcing Trent ISD to equip and maintain Goodman Elementary. The trial court ultimately denied the taxpayer plaintiffs and the county attorney any relief.

On appeal, the plaintiffs abandoned any claim that the consolidation was invalid and instead requested only a mandatory injunction requiring the continued operation of Goodman Elementary, contending that Trent ISD had previously promised to do so. This court refused that request, holding that quo warranto could not be used to review a public official's right to exercise certain functions as a part of the duties of his office or to assert a claim against that official because of official misconduct that did not work a forfeiture. *Id.* at 440.

The Austin court reached a similar conclusion in *Newsom*, 922 S.W.2d at 278. The court held that a quo warranto action serves to test whether an individual has the proper authority to hold office, not to test the validity of their actions once in office. The court reasoned that this was so because of the remedies available in a quo warranto action. TEX. CIV. PRAC. & REM.CODE ANN. § 66.003 (Vernon 2008) provides:

If the person against whom the information is filed is found guilty as charged, the court:

(1) shall enter judgment removing the person from the office or franchise;

(2) shall enter judgment for the costs of prosecution in favor of the relator; and

(3) may fine the person for usurping, intruding into, or unlawfully holding and executing the office or franchise.

*See also State ex rel. Grimes County Tax-payers Ass'n v. Tex. Mun. Power Agency,* 565 S.W.2d 258, 276 (Tex.Civ.App.-Houston [1st Dist.] 1978, writ dism'd) (quo warranto tests only whether the public corporation has the power assumed, not whether it was properly exercised).

These decisions would seemingly support the Waltons' position, but we note that the Texas Supreme Court has repeatedly held that quo warranto is the only proper method for attacking the validity of a city's annexation of territory unless the annexation is wholly void. *See, e.g., Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 658 (Tex.1995); *Alexander Oil Co. v. City of Seguin,* 825 S.W.2d 434, 436 (Tex.1991). Consequently, some actions of a duly elected public official that do not result in a forfeiture are reviewable by quo warranto. One court determined the necessity of a quo warranto proceeding when suit was filed challenging the constitutionality of a legislative bill creating a municipal utility district by asking whether the statute was void or voidable. *See Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist.,* 198 S.W.3d 300, 310–11 (Tex.App.-Texarkana 2006, pet. denied) (acts that are voidable because of procedural irregularities—such as the lack of statutorily required notice—must be challenged by quo warranto proceeding, but acts that are void—such as because of the lack of constitutionally required notice—may be challenged through other legal proceedings).[4]

The supreme court has recognized a public policy reason for requiring quo warranto actions when challenging a voidable action: the elimination of numerous successive suits by private parties attacking the validity of a governmental action. *See Alexander,* 825 S.W.2d at 437. The court noted that, if individual plaintiffs could pursue their own actions, the resulting judgments would be binding only upon the parties and that, consequently, an annexation could be binding upon some individuals but not others. *Id.*[5] One can argue that there are distinctions between an ordinance annexing property or a statute creating a governmental entity and a city council decision approving a settlement, but the public policy protecting governmental entities from successive suits challenging a single decision is still applicable. We realize that the Waltons' position is distinguishable from the general public because the well was drilled on their land. However, this alone is insufficient to provide standing. For example, in *Cox v. Perry,* 138 S.W.3d 515 (Tex.App.-Fort Worth 2004, no pet.), and *Norville,* 118 S.W.3d 503, losing candidates lacked standing to challenge their opponent's right to take office. The courts held that, despite the practical significance a favorable court decision would have to a losing candidate, the harm he had suffered by losing to an ineligible opponent was not distinct from the harm suffered by the general public.

A similar situation is present here. The drilling permit allowed Endeavor to drill on the Waltons' land, but this suit challenges the propriety of the Council Members' decision to approve a settlement

---

4. *See also May v. City of McKinney,* 479 S.W.2d 114, 120 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.) (collateral attack must show entire want of power; it is not sufficient to show mere irregularity in exercise of annexation authority).

5. *See also Bland,* 34 S.W.3d at 555 ("In general, taxpayers do not have a right to bring suit to contest government decision-making because ... governments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review.").

agreement that included issuing a permit. The general public has the same interest in the City's decision-making process as the Waltons, and even though this settlement merely permitted one well, it set a precedent that could conceivably encourage or discourage other applications. Any other landowner or oil company with an interest in drilling activities within city limits would, therefore, have an incentive to contest what it perceived as an unfavorable precedent. Beyond the potential costs imposed on the City, the possibility of inconsistent determinations concerning the validity of a single permit is troublesome. Consequently, unless the Waltons can show that the permit was void, they lack standing.

### C. Void or Voidable?

The Waltons contend that Endeavor's drilling permit is void because it was unauthorized by law or color of law. When Endeavor filed its permit application in 2006, drilling permits were subject to MIDLAND, TEX., ORDINANCE 8132, § 6–1–7 (Oct. 8, 2002). The City denied Endeavor's application on January 23, 2007. On February 13, 2007, it adopted a new drilling ordinance, MIDLAND, TEX., ORDINANCE 8498, § 6–1–2 (Feb. 13, 2007), that applied to any permit issued on or after March 1, 2007. Endeavor sued Midland on May 1, 2007. Endeavor and Midland settled that suit on December 11, 2007, and as part of their agreement, the City issued a drilling permit under Section 6–1–7–the old ordinance.[6]

The Waltons contend that the City's decision on January 23, 2007, to deny Endeavor's application was final and that Council Members did not have the authority to reconsider it. Instead, they argue that Endeavor should have been required to file a new application pursuant to Section 6–1–2. The Council Members respond that the City has broad authority to settle litigation and, therefore, that they had the authority to reconsider Endeavor's permit application as part of any settlement. The Waltons do not contest the City's ability to settle litigation but contend that the settlement agreement is void because it constitutes an illegal contract since no permit could be issued without a new application.

The Council Members' authority is a function of the City's authority since they can have no greater license than the City. Midland is a home rule city.[7] Home rule cities have been described as "mini-legislatures" with full authority to do anything the legislature could theretofore have authorized them to do. See Forwood v. City of Taylor, 147 Tex. 161, 214 S.W.2d 282, 286 (1948)[8]; see also City of Galveston v. State, 217 S.W.3d 466, 469 (Tex.2007) (home rule cities have "all the powers of the state not inconsistent with the Constitution, the general laws, or the city's charter"). The Waltons do not cite any constitutional or statutory provision bar-

---

6. The new ordinance did not expressly repeal Section 6–1–7. The City argues that, despite the new ordinance's statement that it applied to any permit granted after March 1, in fact, state law required the continued application of Section 6–1–7 to any application filed prior to February 13 and, therefore, that it was appropriate to utilize the old ordinance. See TEX. LOC. GOV'T CODE ANN. § 245.002(a)(1) (Vernon 2005). Whether the City should have applied the new or old ordinance to the per-

mit we need not address because this is a procedural matter that could make the permit voidable but not void.

7. TEX CONST. art. XI, § 5 (providing for home rule in cities with populations of 5,000 or more inhabitants).

8. See also TEX. LOC. GOV'T CODE ANN. §§ 51.071–.072 (Vernon 2008) (home rule municipalities have the full power of local self government).

ring reconsideration of a permit application, and the City's charter reserves to itself the "authority to compromise and settle any and all claims and lawsuits of every kind and character in favor of or against the said city." CITY OF MIDLAND, TEX., CHARTER art. III, § 25 (amended 1955).

The authority to grant or deny a permit application logically includes the authority to reconsider an adverse decision absent a specific statutory prohibition or a jurisdiction-divesting appeal process. If the Waltons are correct and because of a mistake of fact the city council voted against a permit application at one council meeting, then the council could not rectify that mistake at the next meeting without requiring a new permit application. Such a rule would serve no useful purpose.

Endeavor's suit contended that the City wrongfully refused to grant its application and pointed to an alleged violation of Midland ordinances requiring timely actions on permit applications, alleged that the City was impermissibly applying its new drilling ordinance retroactively, and contended that the City was discriminating against it through unequal treatment of oil companies. If convinced that Endeavor was correct and that its application had been wrongfully denied, Council Members had the authority to reconsider that decision.

The fact that the permit was issued as part of a settlement does not alter the analysis. Endeavor's suit presented the City with some risks. Endeavor contended that the City's decision constituted an inverse condemnation, and it sought actual damages for the value of the proven reserves under its property, punitive damages, and attorney's fees. If Endeavor successfully proved any of its claims, a monetary judgment would follow. A finding of regulatory taking would adversely impact the City's ability to regulate future drilling activity. Even if Endeavor was ultimately unsuccessful, the City had exposure for its own legal costs and could expect operational inefficiencies because of staff time lost to the litigation.

If Council Members determined that the litigation risk outweighed the benefit of a favorable result, reconsidering the permit application would be a logical response because, if Endeavor received a permit, most of its claims would be mooted and because it is reasonable to believe that Endeavor would favorably consider dropping any remaining claims in exchange. The Waltons' position would not only unfairly limit the City's ability to address this risk but would, in fact, necessarily increase it. Endeavor contended that the City was impermissibly applying its new drilling ordinance retroactively. If the Waltons are correct and the settlement required a new application-which because of the timing would have been subject to the new ordinance-requiring a new application concedes Endeavor's point. Moreover, because a new application would require another public hearing and review process, the City presumably could not even promise that it would be favorably received. If Endeavor was understandably unwilling to file a new application absent any meaningful assurance of success, then the City's only other option was to pay monetary damages.

The Endeavor settlement reflects a risk analysis by both parties. The agreement's recitals acknowledge the City's position that the denial of a single permit application did not amount to a regulatory taking and that the City denied any liability for damages. Endeavor agreed to drop any demand for monetary damages and agreed that any future permit application would be subject to the City's new drilling ordinance—indeed, as the City notes, the permit included many of the new ordinance's

provisions. Consequently, it appears that both parties made concessions without any admissions in an effort to settle a controversy, to avoid further litigation expense, and to eliminate potential risks.

The Waltons argue that the City's settlement authority cannot be read to allow an agreement that is counter to the City's ordinances. In this instance, they argue that Endeavor's permit does not comply with either Section 6–1–2 or Section 6–1–7 and that there is no provision allowing the City to grant a permit by contract. Whether the permit complied with each and every provision of Section 6–1–2 or Section 6–1–7 would at best raise an issue of voidability. Moreover, the Waltons' argument gives insufficient consideration to the fact that Endeavor did file a permit application, the City did hold a public hearing on that application, and the Waltons participated in it. The Waltons do not contend that their due process rights were violated. As we understand their position, the principle advantage a second application would have provided is that it would have required specific compliance with the City's new drilling ordinance— which as we have noted would necessarily require a concession by the City to Endeavor's impermissible retroactive application argument and, given the provisions of the permit ultimately issued, would provide questionable value.

The Waltons argue that the converse is also true and that there was no new information developed that Endeavor was entitled to a permit. First, this challenge goes to the propriety of the decision, which merely raises voidability concerns. Second, while it is true that no new public hearing was held, the City was involved in litigation for several months and was represented by outside council. It is reasonable to assume that Council Members acquired additional information concerning

the merits of the litigation or the risks it imposed on the City. Much of this information would be privileged and, therefore, not public information. *See* Tex. Gov't Code Ann. § 552.107 (Vernon Supp.2008). The Council Members' authority is not lessened merely because they may act upon confidential information.

Because Council Members have the authority to reconsider a permit application and the authority to settle litigation, they had the authority to reconsider Endeavor's application as part of their settlement agreement. That agreement is not void and, thus, the Waltons lack standing. The Council Members' first issue is sustained. It is unnecessary for us to address their remaining issues.

### IV. *Holding*

The trial court's order denying the Council Members' plea to the jurisdiction is reversed, and judgment is rendered dismissing the Waltons' claims against the Council Members for lack of jurisdiction.